N O T I C E

To: Cary Ichter, Esq.
Meadows Ichter & Bowers
14 Piedmont Center, Suite 1100
3535 Piedmont Road, NE
Atlanta, GA 30305

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

CIVIL ACTION

v.

NO. 1:0-cv-1720-CC

World Championship Wrestling, Inc., et al,

defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

99.

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E

To: Kelly Jean Beard, Esq.
Meadows Ichter & Bowers
14 Piedmont Center, Suite 1100
3535 Piedmont Road, NE
Atlanta, GA 30305

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

CIVIL ACTION

v.

NO. 1:0-cv-1720-CC

World Championship Wrestling, Inc., et al,

defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E

To: Merrick D. Bernstein, Esq.
Meadows Ichter & Bowers
14 Piedmont Center, Suite 1100
3535 Piedmont Road, NE
Atlanta, GA 30305

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

v.

World Championship Wrestling, Inc., et al,

defendant

CIVIL ACTION

NO. 1:0-cv-1720-CC

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E

To: Michelle Rothenberg, Esq.
Meadows Ichter & Bowers
14 Piedmont Center, Suite 1100
3535 Piedmont Road, NE
Atlanta, GA 30305

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

CIVIL ACTION

v.

NO. 1:0-cv-1720-CC

World Championship Wrestling, Inc., et al,

defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E
- - - - - -

To: John J. Dalton, Esq.
Troutman Sanders
Bank of America Plaza
Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

CIVIL ACTION

v.

NO. 1:0-cv-1720-CC

World Championship Wrestling, Inc., et al,

defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

NOTICE

To: James Andrew Lamberth, Esq.
Troutman Sanders
Bank of America Plaza
Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

v.

World Championship Wrestling, Inc., et al,

defendant

CIVIL ACTION

NO. 1:0-cv-1720-CC

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E

To: Evan H. Pontz, Esq.
Troutman Sanders
Bank of America Plaza
Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

CIVIL ACTION

v.

NO. 1:0-cv-1720-CC

World Championship Wrestling, Inc., et al,

defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

N O T I C E

To: Eric Allen Richardson, Esq.
Troutman Sanders
Bank of America Plaza
Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

CIVIL ACTION

v.

NO. 1:0-cv-1720-CC

World Championship Wrestling, Inc., et al,

defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

NOTICE

To: Bridget Bobick, Esq.
Troutman Sanders
Bank of America Plaza
Suite 5200
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216

January 10, 2003

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Rick Reeves,

plaintiff

CIVIL ACTION

v.

NO. 1:0-cv-1720-CC

World Championship Wrestling, Inc., et al,

defendant

NOTICE TO RESPOND TO SUMMARY JUDGMENT MOTION

On 1/8/03, World Championship Wrestling, Inc., et al, filed a motion for summary judgment in this Court, case document number 99.

Pursuant to this Court's order dated April 14, 1987, opposing counsel is hereby notified that within 20 days from the date said motion was

served, filing of all materials, including any affidavits, depositions, answers to interrogatories, admissions on file and any other relevant materials to be considered in opposition to the motion for summary judgment, is required. Federal Rules of Civil Procedure, Rule 56(c); Moore v. State of Florida, 703 F.2d 516, 519 (11th Cir. 1983).

Unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 20 day period. Id. at 519. See also Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985).

The entry of a summary judgment by the trial court is a final judgment on the claim or claims decided. Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984). Whenever the non-moving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the nonmoving party must go beyond the pleadings and must designate, by affidavit or other materials, "... specific facts showing that there is a genuine issue for trial." Federal Rules of Civil Procedure, Rule 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324; 106 S.Ct. 2548, 2552-53; 91 L.Ed.2d 265, 272-3.

Luther D. Thomas, Clerk
United States District Court
Northern District of Georgia

Copies to counsel of record

ORIGINAL



CLERK'S OFFICE
U.S.D.C. Atlanta
JAN - 8 2003
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICK REEVES,<br><br>Plaintiff,<br><br>v.<br><br>WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC. and TURNER, BROADCASTING SYSTEM, INC.,<br><br>Defendants. | ) | CIVIL ACTION FILE<br><br>NO. 1:00-CV-1720-CC |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendants Universal Wrestling Corporation (f/k/a World Championship Wrestling, Inc.)("WCW"), Turner Sports, Inc. ("TSI") and Turner Broadcasting System, Inc. ("TBS")(collectively "Defendants") hereby move this Court for an order granting summary judgment in their favor because as a matter of law no genuine issue of material fact exists to be tried in this case.

Defendants base this Motion on the following documents and record evidence filed contemporaneously herewith:

1. Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment;

2. Deposition testimony of Rick Reeves;

99

3. Deposition testimony of James A. Morrison;

4. Deposition testimony of Joseph N. Hamilton;

5. Affidavit of Diana Myers;

6. Affidavit of Paul Orndorff; and

7. Defendants' Statement of Undisputed Material Facts.

This 8th day of January, 2003.

Evan H. Pontz

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Attorneys for Defendants

TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICK REEVES,<br><br>Plaintiff,<br><br>v.<br><br>WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC. and TURNER, BROADCASTING SYSTEM, INC.,<br><br>Defendants. | ) | CIVIL ACTION FILE<br><br>NO. 1:00-CV-1720-CC |

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT* upon the interested parties by hand delivery to:

Cary Ichter
Kelly Jean Beard
Charles Gernazian
Michelle M. Rothenberg-Williams
MEADOWS, ICHTER AND BOWERS, P.C.
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA  30305

This 8th day of January, 2003.

EVAN H. PONTZ
Georgia Bar No. 583577

TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA 30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)




ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICK REEVES, Plaintiff, | ) | |
| v. | ) | CIVIL ACTION FILE NO. 1:00-CV-1720-CC |
| WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC. and TURNER, BROADCASTING SYSTEM, INC., Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Universal Wrestling Corporation (f/k/a World Championship Wrestling, Inc.) ("WCW"), Turner Sports, Inc. ("TSI") and Turner Broadcasting System, Inc. ("TBS") (collectively "Defendants") submit this Memorandum of Law in Support of their Motion for Summary Judgment on all claims brought by Plaintiff Rick Reeves ("Reeves").

**INTRODUCTION**

Reeves filed this action on July 10, 2000, alleging claims of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and under the Civil Rights Act of 1866, 42 U.S.C. § 1981, and also alleging a state law claim of intentional infliction of emotional distress. With respect to Reeves's race discrimination claims, he alleges that WCW (i) discriminated against him due to his race (African-American) with

79

regard to wrestling opportunities and (ii) subjected him to a racially hostile work environment. Reeves also alleges that by engaging in such discriminatory conduct, WCW intentionally caused him emotional distress. Based solely on principles of agency and vicarious liability, Reeves seeks not only to hold WCW liable for these alleged acts, but to hold TSI and TBS liable as well.

Reeves's claims are baseless. Most of the alleged actions by WCW that Reeves contends support his claims of discrimination are barred by the applicable statute of limitations. With regard to WCW's alleged actions that are not time-barred, there is no evidence that WCW ever treated Reeves differently because of his race. In fact, Reeves never performed any services for or on behalf of WCW, and the record is devoid of any evidence that WCW even knew who Reeves was. Reeves's discrimination claims not only lack legal foundation and factual support, they are frivolous and abusive. Accordingly, summary judgment should be granted on all of Reeves's discrimination claims.

Reeves's claim for intentional infliction of emotional distress is likewise frivolous, because this claim is based on nothing more than his allegations of race discrimination, which are baseless and cannot sustain a claim for intentional infliction of emotional distress under Georgia law. Moreover, because Reeves's claims against TSI and TBS derive solely from Reeves's

claims against WCW and are based on principles of agency and vicarious liability, summary judgment should be granted in favor of TSI and TBS on all of Reeves's claims.

## STATEMENT OF FACTS

### WCW's Business

WCW created, produced, and marketed professional wrestling events during the 1990s though March 2001. (Affidavit of Diana Myers ("Myers Aff."), at ¶ 3, a true and correct copy of which is attached hereto as Exhibit A). WCW's wrestling events were seen by live audiences and/or aired on various television networks and pay-per-view cable and satellite systems. (Id.) A creative team of writers and producers at WCW created WCW's wrestling events, both live and taped, with the goal of entertaining wrestling fans and general audiences. (Id.) The wrestlers and other on-screen talent who appeared in WCW's wrestling events provided their services to WCW as independent contractors, either through formal written contracts or without written agreements. (Id. at ¶ 4). Nearly all of the wrestlers who performed with WCW came to WCW from either other professional wrestling organizations, WCW's professional wrestling training program, located at its training facility known as the "Power Plant," or had otherwise established fame, notoriety or a reputation in some other sport or in the entertainment industry before coming to WCW. (Affidavit of Paul

Orndorff ("Orndorff Aff"), ¶ 5, a true and correct copy of which is attached hereto as Exhibit B).

After having commercial and financial success in the mid to late 1990s, WCW's business suffered a sharp downturn in 1999. (Myers Aff. at ¶ 6). As a result, WCW restructured its business operations. (Id.) Despite WCW's efforts, its business downturn continued, and in March 2001, WCW sold certain of its assets and ceased its operations. (Id. at ¶ 8). After this sale was completed, WCW changed its name to Universal Wrestling Corporation. (Id.)

**Reeves's Background and Purported "Relationship" With WCW**

Reeves has never wrestled or performed any other services on behalf of WCW. (Deposition of Rick Reeves, ("Reeves Dep.") at 127).[1] Reeves claims that his wrestling "career" began in 1992, after he began training with former professional wrestler Claude Patterson. (Reeves Dep. at 29). Reeves contends that in 1993, shortly after he began to "train" with Mr. Patterson, Reeves and Mr. Patterson approached Ole Anderson, who at that time worked for WCW, about Reeves becoming a wrestler for WCW. (Id. at 30). Reeves testified that he and Mr. Patterson told Mr. Anderson that

[1] Excerpts of deposition testimony and copies of deposition exhibits referenced herein are included in the Appendix, filed simultaneously herewith.

Reeves was Mr. Patterson's son to gain Mr. Anderson's interest.[2] (Id. at 31-32). Reeves claims that during this conversation, Mr. Anderson invited Reeves to attend some WCW wrestling program tapings. (Id. at 32-33).

According to Reeves, between 1993 and 1994, he attended several WCW television tapings. (Id. at 33-34). Reeves testified that at these tapings, he would sit and wait for someone to ask him to wrestle. (Id. at 39). However, Reeves was never asked to wrestle or perform any services on behalf of WCW at any of the tapings that he attended. (Id. at 34-35).

Reeves testified that because he was not asked to wrestle at the tapings that he attended, he began to send video tapes of himself wrestling to WCW. (Id. at 45-46). Between 1995 and 1996, Reeves claims that he sent 7 or 8 video tapes to WCW. (Id. at 45-47). Reeves does not know to whom at WCW he sent the tapes. (Id. at 45). Further, Reeves admits that he does not know if anyone at WCW ever received or viewed any of these tapes. (Id. at 47-48).

When Reeves did not receive a response from WCW regarding the video tapes that he purportedly sent to WCW, he alleges that he began calling and leaving messages with WCW employees asking to wrestle for WCW. (Id. at 49). Reeves claims that between 1995 and 1999, he called J.J. Dillon of WCW six or seven times a month.

---

[2] In fact, Reeves and Mr. Patterson are not related.

(Id. at 49-50). Reeves admitted that his calls were never returned, that he never even spoke to Mr. Dillon, and that he does not know if Mr. Dillon even received his messages. (Id. at 50-51).[3]

Reeves testified that, between 1995 and 1999, he also called Terry Taylor of WCW several times. (Id. at 54-55). However, Reeves testified that he actually only spoke with Mr. Taylor when he saw Mr. Taylor at a bar and asked him for a job wrestling at WCW. (Id. at 55). According to Mr. Reeves, Mr. Taylor told Reeves that he was not interested. (Id. at 55-56).

Reeves also claims that he visited WCW's training facility, the Power Plant, in a further attempt to wrestle with WCW. (Id. at 59). Reeves allegedly asked Jody Hamilton, the individual then in charge of the Power Plant, if he could help out in some capacity. (Id.) According to Reeves, Mr. Hamilton informed him that no help was needed.[4] (Id.) Reeves testified that he never wrestled, trained, attended a tryout, or performed any duties on behalf of WCW at the Power Plant. (Reeves Dep. at 60).

---

[3] Mr. Dillon testified that he has never heard of Reeves. (Deposition of James A. Morrison (p/k/a J.J. Dillon) ("Dillon Dep."), at 144).

[4] Mr. Hamilton also testified that he has never heard of Reeves. (Deposition of Joseph N. Hamilton ("Hamilton Dep."), at 70).

## ARGUMENT AND CITATION OF AUTHORITY

### I. THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate if the evidence before the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Vason v. City of Montgomery, 240 F.3d 905, 907 (11th Cir. 2001). To survive summary judgment, the nonmoving party must come forward with concrete evidence in the form of "*specific facts* showing that there is a genuine issue for trial." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis added).

The summary judgment rule applies with equal force in discrimination cases. The Eleventh Circuit recently held:

> While acknowledging that questions of fact in job discrimination cases are "both sensitive and difficult" and "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," the [U.S.] Supreme *Court has told us that "none of this means that trial* courts or reviewing courts should treat discrimination differently from other ultimate questions of fact." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 524 (1993). ...And quite recently, the [U.S. Supreme] Court rejected a rule which would have made it easier for job discrimination plaintiffs to get their case to a jury, explaining that "[t]o hold otherwise would be effectively to insulate an entire category of employment discrimination cases from [appropriate] review..., and we have reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact." Reeves, 120 S. Ct. at 2109. ...The long and short of it is that the summary judgment rule applies in job discrimination cases just

as in other cases. No thumb is to be placed on either side of the scale.

Chapman v. A1 Transport, 229 F.3d 1012, 1026 (11th Cir. 2000).

As demonstrated herein, Reeves cannot present evidence sufficient to create a genuine issue of material fact on any of his claims. Accordingly, Defendants are entitled to summary judgment on all of Reeves's claims.[5]

## II. REEVES'S CLAIMS BASED ON EVENTS OCCURRING PRIOR TO JULY 10, 1998 ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

In support of his discrimination claim, Reeves alleges that: (1) WCW did not give him an opportunity to wrestle when he attended WCW television tapings; (2) WCW did not respond to the video tapes sent by Reeves; and (3) WCW did not respond to the voice messages left by Reeves. As demonstrated below, none of these alleged acts provide a basis for a claim under § 1981 or Title VII. Further, because it is undisputed that a vast majority of these alleged events occurred more than two years before Reeves filed this lawsuit, most of these claims of discrimination are

[5] Reeves's claims against TSI and TBS are based on theories of derivative liability. (Third Amended Complaint ¶¶ 34-46). Reeves does not claim that either TSI or TBS took any improper actions against Reeves or violated any law as to Reeves. Rather, Reeves claims that WCW took such actions, and that TSI and TBS should be held accountable because of their purported relationship with WCW. (Id.) Because Reeves's claims against WCW fail as a matter of law, Reeves's derivative claims against TSI and TBS also fail.

barred by the applicable statute of limitations and fail as a matter of law.

The U.S. Supreme Court has characterized a claim under 42 U.S.C. § 1981 as a personal injury cause of action to which state statutes of limitations for personal injury actions apply. Alexander v. Fulton Cnty., GA, 207 F.3d 1303, 1346 (11th Cir. 2000). For § 1981 claims brought in federal courts in Georgia, "the applicable statute of limitations is found in O.C.G.A. § 9-3-33 and is 2 years." Butler v. Matsushita Comm. Indns. Corp. of U.S.A., 203 F.R.D. 575, 582 (N.D. Ga. 2001). Reeves filed his Complaint on July 10, 2000. Accordingly, any of Reeves's claims based on events arising prior to July 10, 1998, are barred as a matter of law. Alexander, 207 F.3d at 1346; Butler, 203 F.R.D. at 582.[6]

It is undisputed that the vast majority of the alleged actions that Reeves contends support his claims that WCW failed to provide him with wrestling opportunities occurred (if at all) prior to July 10, 1998. Reeves's claim that WCW discriminated against him at television tapings is indisputably time-barred. He

[6] With respect to Reeves's Title VII claim, a Charge of Discrimination must be filed with the EEOC within 180 days from the date of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e). Reeves filed his Charge of Discrimination on May 11, 2000. Thus, any Title VII claim by Reeves arising more than 180 days before he filed his Charge, or before November 11, 1999, is barred by Title VII's statute of limitations as well.

testified that he attended the television tapings between 1993 and 1995, more than fours years before he filed this lawsuit. (Reeves Dep. at 35-37). Reeves's claim of discrimination based on the wrestling tapes that he purportedly sent to WCW also is time-barred. Reeves testified that he sent seven or eight tapes to WCW between 1994 and 1996, more than three years before he filed this lawsuit. (Id. at 45, 47).

Reeves's claims based on alleged unreturned phone messages to J.J. Dillon and Terry Taylor of WCW also are largely time-barred. Reeves testified that between 1995 and 1999 he left seven phone messages a month.[7] (Id. at 49-50). Any claims based on unreturned telephone messages placed prior to July 10, 1998 cannot survive summary judgment.

**III. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO REEVES'S DISCRIMINATION CLAIMS BECAUSE HE CANNOT PRODUCE ANY EVIDENCE THAT WCW DISCRIMINATED AGAINST HIM ON THE BASIS OF HIS RACE.**

In a disparate treatment case such as this one, Reeves must prove "intentional discrimination" to prevail. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981); Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 153 (2000) Because Reeves cannot present direct evidence of discrimination, the proof

[7] Reeves testified that as early as 1996 or 1997, after his calls were not being returned, he believed that WCW was discriminating against him. (Reeves Dep. at 53). A plaintiff "who knowingly fails to seek relief is exactly the danger Congress was trying to protect against in establishing the statute of limitations." Butler, 203 F.R.D. at 583.

scheme articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to his claim of disparate treatment. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Under the McDonnell Douglas proof scheme, Reeves must present circumstantial evidence sufficient to establish a prima facie case of discrimination. Farrior v. H.J. Russell & Company, 45 F. Supp.2d 1358, 1366 (N.D. Ga. 1999).

The mere presentation of circumstantial evidence, however, is not sufficient to defeat a motion for summary judgment. Even if a plaintiff can establish a prima facie case of race discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions regarding the plaintiff. Reeves, 530 U.S. at 142. The defendant is not required to prove absence of discriminatory motive, but merely to articulate some legitimate reason for its actions. Moreover, the defendant's burden is one of production and not persuasion. See Id.; Burdine, 450 U.S. at 253.

Once such a reason is articulated, any presumption of discrimination arising out of the prima facie case "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must then "prove by a preponderance of the evidence that

the legitimate reasons offered . . . were not [the] true reasons, but were a pretext for discrimination." Texas Dep't of Community Affairs, 450 U.S. at 253; see Reeves, 530 U.S. at 143. The plaintiff must present "concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." St. Mary's Honor Center, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 253).

As demonstrated herein, Reeves cannot produce **any** evidence that WCW discriminated against him because of his race by not using or contracting with him to wrestle for WCW. Moreover, in light of the fact that Reeves never performed any services for WCW, his hostile work environment claim fails. Accordingly, Defendants are entitled to summary judgment as to Reeves's § 1981 claims.

### A. Reeves Cannot Establish That He Was Denied Wrestling Opportunities Because Of His Race.

Reeves's only discrimination claim that is not time-barred arises from Reeves's contention that he left phone messages for J.J. Dillon and Terry Taylor between July 10, 1998 and 1999, that were not returned. Reeves's claim of discrimination boils down to

a "failure to hire" claim. Therefore, Reeves must produce evidence that WCW actually and intentionally refused to hire him because of his race. Oncale v. Sundower Offshore Services, Inc., 523 U.S. 75, 78 (1998) (quoting 42 U.S.C. § 2000-2(a)(1)). Reeves cannot present any evidence to satisfy this burden.

To establish a prima facie case that he was not hired to wrestle for WCW on account of his race under the McDonnell-Douglas framework, Reeves must show: (1) that he is a member of a protected class; (2) that he applied and was qualified for a job for which WCW was seeking applications; (3) that, despite his qualifications he was rejected; and (4) that, after his rejection, the employer hired someone outside of Reeves's protected class, or the position remained open or filled by someone outside of Reeves's protected class. Welborn v. Reynolds Metals Co., 810 F.2d 1026, 1028 (11th Cir. 1987). Reeves cannot establish a prima facie case of failure to hire because the record is devoid of any evidence that Reeves actually applied for an open position with WCW, that WCW had sufficient knowledge of Reeves to have rejected him, or that similarly situated white individuals filled any position for which he claims he applied.

Reeves contends that he placed phone calls to J.J. Dillon and Terry Taylor of WCW (Reeves Dep. at 49-51; 54), but he conceded that he has no knowledge if the messages he left were even

received. (Id. at 51). J.J. Dillon testified that he has never heard of Reeves. (Dillon Dep. at 144). Moreover, Reeves's only recollection of even meeting either of these gentlemen are brief encounters he claims to have had with Mr. Taylor at a bar. (Reeves Dep. at 55). Reeves admits that the only other individuals at WCW, besides Mr. Dillon and Mr. Taylor, that he contacted regarding opportunities at WCW were Mr. Anderson and Mr. Hamilton. (Id. at 85). In regards to Mr. Anderson, however, Reeves was merely invited to some tapings and, with Mr. Hamilton, Reeves concedes he did not try out for the training program at the Power Plant and merely asked if he could help in some capacity.[8] (Id. at 59-60). Mr. Hamilton testified that he has never heard of Reeves. (Hamilton Dep. at 70). Accordingly, Reeves cannot present any evidence that he actually applied for a position at WCW for which it was seeking applicants.

Further, Reeves cannot demonstrate that WCW actually considered or rejected him for any particular position at WCW. The record is devoid of any evidence that either Mr. Dillon, Mr. Taylor, or anyone else at WCW had any knowledge of who Reeves is, or his race, and Reeves admits that he does not know if Mr. Dillon or Mr. Taylor has ever seen Reeves wrestle. (Reeves Dep. at 47-48, 56-57). Therefore, Reeves cannot present any evidence that

[8] And, as discussed in Section II above, Reeves's claims based upon his alleged encounters with Mr. Anderson are time-barred.

demonstrates that WCW actually and intentionally refused to hire him because of his race. Because Reeves cannot establish that he applied for and was rejected for a position at WCW, his failure to hire claim fails.

Reeves also cannot make out a prima facie case of discriminatory failure to hire because he cannot point to any **similarly situated** white wrestler with WCW who was hired for any position for which he was rejected.

Reeves claims that numerous white wrestlers, hired by WCW, including Kevin Nash, Chuck Palumbo, Stan Stasiak, Dallas Page, Bill Kidman and Perry Saturn were "similarly situated to him." (Reeves Dep. at 73). In making this assertion, however, Reeves relies on nothing more than his own subjective opinion. Reeves's subjective opinion that he was similarly situated to or better qualified than wrestlers who wrestled with WCW is insufficient to defeat summary judgment. See Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000) (explaining that "an employee's own opinions about his . . . qualifications do not give rise to a material factual dispute")(quoting Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Svcs., 165 F.3d 1321, 1329-30 (10th Cir. 1999), cert. denied, 528 U.S. 815, 120 S. Ct. 53 (1999)); see also Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir.

1983) (instructing that an employee's subjective belief does not establish a jury issue).

Moreover, to sustain a claim of discrimination, Reeves must do more than show that he was better qualified than another individual who received a position that he wanted. Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir. 2001) (quoting Lee v. GTE Florida, Inc., 226 F.3d 1249, 1253-54 (11th Cir. 2000 (quotations omitted). "Disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless these disparities are so apparent as virtually to jump off the page and slap you in the face." Id.; see also Miller v. Bed, Bath & Beyond, Inc., 185 F. Supp. 2d 1253, 1271 (N.D. Ala. 2002). Here, Reeves cannot even establish that the wrestlers to whom he points were similarly situated to him.[9] Because he is unable to meet this lesser burden as to these other wrestlers, he most certainly cannot establish that he was more *qualified* than they were. Accordingly, Reeves cannot establish a prima facie case of discrimination in denial of opportunities, and this claim fails.

**B. Reeves Cannot Establish That He Was Subjected To A Racially Hostile Work Environment.**

Reeves also alleges that he was subjected to a racially hostile environment at WCW. (Third Amended Complaint ¶ 55).

[9] Reeves cannot produce any evidence regarding the circumstances under which any of the wrestlers who Reeves points to began wrestling for WCW.

To sustain a claim for a hostile work environment under § 1981, a plaintiff must have performed services on behalf of the defendant or have had some working relationship with the defendant. See Shields v. Fort James Corp., 305 F.3d 1280, 1282-1283 (11th Cir. 2002)(finding that the purpose of a § 1981 hostile work environment claim is to protect an independent contractor who has contracted to do work for an employer from a hostile work environment, and to afford the contractor all of the "benefits, privileges, terms, and conditions of the contractual relationship."). Reeves has not and cannot satisfy this essential element of his claim.

It is undisputed that Reeves never performed any services on behalf of WCW and did not have any working relationship with WCW whatsoever. (Reeves Dep. at 127). As Reeves himself acknowledges, the extent of his "relationship" with WCW arose from an alleged invitation to him to attend WCW television tapings between 1993 and 1994. (Id.) Since this is the sole basis for his claim, Reeves's hostile work environment claim fails.

**IV. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO REEVES'S TITLE VII CLAIMS.**

Reeves also asserts claims of race discrimination under Title VII of the Civil Rights Act of 1964. (Third Amended Complaint ¶¶ 51-53). The undisputed facts of record conclusively establish

that Reeves cannot maintain a discrimination claim under Title VII.

First, as demonstrated in Section II above, Reeves's claims based on events prior to November 11, 1999 are barred by Title VII's statute of limitations. See n.6, supra. Therefore, Reeves's only Title VII claim that is arguably not time-barred arises from Reeves's contention that he left phone messages for J.J. Dillon and Terry Taylor between July 10, 1998 and 1999, that were not returned. (Reeves Dep. at 84-85).

Second, a Title VII race discrimination claim requires that an **employment relationship** exist between the plaintiff and the defendant. Holloman v. Northeast Georgia Area Development Comm'n, 740 F. Supp. 1571, 1575 (M.D. Ga. 1990). It is undisputed that Reeves wanted to wrestle for WCW. Consequently, the position that Reeves allegedly attempted to obtain was not as an employee of WCW, but rather, as an independent contractor. (Myers Aff. at ¶ 4). Independent contractor relationships are outside the statute's scope. See Cobb v. Sun Papers, Inc., 673 F.2d 337, 339-42 (1982), cert. denied, 459 U.S. 874, 103 S. Ct. 163, 74 L. Ed. 2d 135 (1982); see also Holloman, 740 F. Supp. at 1575 (explaining that if the plaintiff "were an independent contractor, and not an agent or employee [of the defendant], then there would be no

'employment relationship' between the two and [the plaintiff] would not be subject to Title VII's protections").

To determine whether a particular individual is an employee or an independent contractor, courts employ common law principles of agency. See Cobb, 673 F.2d at 341. Among the factors to be considered in determining whether an individual is an employee or an independent contractor are the hiring party's right to control, the level of skill required, the source of equipment and tools, the duration of the relationship, the method of payment, the provision of employee benefits, the tax status of the parties and the intent of the parties. Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 323-24, 112 S. Ct. 1344, 117 L. Ed. 2d 581, 589-90 (1992) (citing Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52, 109 S. Ct. 2166, 104 L. Ed. 811 (1989)).

Because wresters at WCW exercised control over the manner of their performance, were given creative freedom in creating their characters and performing, did not receive benefits, were permitted to have employment outside of WCW, and signed short-term independent contractor agreements, had Reeves wrestled for WCW he would have been an independent contractor of WCW, not an employee. (Orndorff Aff. at ¶ 6).[10] In addition, it is undisputed that

[10] This Court has previously considered the issue of whether a professional wrestler for WCW was an independent contractor for purposes of Title VII and concluded that the professional wrestler

Reeves has never performed any services on behalf of WCW. (Reeves Dep. at 127). Accordingly, Reeves's Title VII claim fails.

## V. SUMMARY JUDGMENT SHOULD BE GRANTED ON REEVES'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM BECAUSE WCW DID NOT ENGAGE IN ANY OUTRAGEOUS CONDUCT.

Reeves contends that WCW, by allegedly engaging in racially discriminatory conduct, intentionally inflicted severe emotional distress on him. (Third Amended Complaint ¶ 58-60). This claim is baseless.

To establish a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must establish: (1) intentional or reckless conduct; (2) extreme and outrageous conduct by the defendant; (3) severe emotional distress suffered by the plaintiff; and (4) a causal connection between the conduct and the emotional distress. Hendrix v. Phillips, 207 Ga. App. 394, 395, 428 S.E.2d 91, 92-93 (1993).

To be "extreme and outrageous," the alleged conduct must be so "terrifying or insulting as naturally to humiliate, embarrass or frighten" the plaintiff and so severe that "no reasonable man could be expected to endure" these actions. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992). Liability for

---

was properly classified as an independent contractor, not an employee. See Ranger Ross v. World Championship Wrestling, Inc., Civil No. 1:93-CV-1206-JEC (N.D. Ga. 1994) (unpublished opinion). A true and correct copy of the Court's opinion is attached hereto as Exhibit C.

intentional infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Ward v. Papa's Pizza To Go, Inc., 907 F. Supp. 1535, 1540 (S.D. Ga. 1995). Thus, when a plaintiff alleges that conduct such as race discrimination constitutes intentional infliction of emotional distress, the alleged conduct must be severe, such as an on-going pattern of explicit and oppressive harassment that includes or resembles a physical assault. See Coleman v. Housing Auth. of Americus, 191 Ga. App. 166, 381 S.E.2d 303 (1989). Reeves does not even come close to meeting this standard.

Reeves cannot provide any evidence of "extreme and outrageous" conduct by WCW. Reeves testified that WCW's only "acts" were its failure to respond to his purported phone messages and its failure to offer him an opportunity to wrestle with WCW, and that there is nothing other than WCW's alleged acts of discrimination that caused him emotional harm.[11] (Reeves Dep. at 104). The refusal to hire an individual under circumstances that could constitute unlawful discrimination are insufficient to support an intentional infliction of emotional distress claim. Ward, 907 F. Supp. at 1542 (granting summary judgment to defendant

---

[11] And, as discussed earlier, the vast majority of the actions Reeves contends support his discrimination claims are barred by the applicable statute of limitations.

employer). Because the undisputed evidenced shows that Reeves was not subjected to discriminatory treatment, and because Reeves must establish more than just alleged discriminatory conduct to sustain his intentional infliction of emotional distress claim, summary judgment should be entered on this claim.

**CONCLUSION**

For all of the foregoing reasons, Defendants' Motion for Summary Judgment on all of Reeves's claims asserted in this action should be granted, and all of Reeves's claims should be dismissed.

This 8th day of January, 2003.

TROUTMAN SANDERS LLP

Evan H. Pontz

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
(404) 885-3000

Attorneys for Defendants

**CERTIFICATION**

Pursuant to Local Rule 7.1(D), I certify that this Memorandum of Law has been prepared with one of the fonts and point selections ("Courier New 12") approved by the Court in Local Rule 5.1(B).

This 8th day of January, 2003.

Evan H. Pontz
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
(404) 885-3000

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICK REEVES,<br><br>Plaintiff,<br><br>v.<br><br>WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC. and TURNER, BROADCASTING SYSTEM, INC.,<br><br>Defendants. | ) | CIVIL ACTION FILE<br><br>NO. 1:00-CV-1720-CC |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served a copy of this ***MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*** upon the interested parties by hand delivery to:

Cary Ichter
Kelly Jean Beard
Charles Gernazian
Michelle M. Rothenberg-Williams
MEADOWS, ICHTER AND BOWERS, P.C.
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA 30305

This 8th day of January, 2003.

Evan H. Pontz
TROUTMAN SANDERS LLP
Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
(404) 885-3000




# EXHIBIT / ATTACHMENT

## _______A_______

(To be scanned in place of tab)

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Walker v. World Championship Wrestling, Inc., Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-0367-CC
Onoo v. World Championship Wrestling, Inc., Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-0368-CC
Norris v. World Championship Wrestling, Inc., Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-0369-CC
Easterling v. World Championship Wrestling, Inc. and Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-1715-CC
Davis v. World Championship Wrestling, Inc. and Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-1716-CC
Worthen v. World Championship Wrestling, Inc. and Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-1717-CC
Speight v. World Championship Wrestling, Inc. and Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-1718-CC
Saengsiphan v. World Championship Wrestling, Inc. and Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-1719-CC
Reeves v. World Championship Wrestling, Inc. and Turner Sports, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:00-CV-1720-CC
Patterson v. World Championship Wrestling, Inc., Turner Sports, Inc., Turner Entertainment Group, Inc. and Turner Broadcasting System, Inc., Civ. File No. 1:01-CV-1152-CC

**AFFIDAVIT OF DIANA MYERS**

DIANA MYERS, who having personally appeared before the undersigned officer duly authorized to administer oaths and having been first duly sworn according to law, deposes and states the following:

1. My name is Diana Myers. I am of majority age, and I give this testimony of my own free will. I have personal knowledge of and am competent to testify to the facts stated herein. The facts stated herein are true and correct.

2. I was employed by Universal Wrestling Corporation (f/k/a/ World Championship Wrestling, Inc. and hereinafter referred to as "WCW") beginning in October 1997 and most recently held the title of Vice President of Business and Legal Affairs. In my position at WCW, I was familiar with virtually all aspects of WCW's business and legal affairs.

3. WCW created, produced, and marketed professional wrestling programs during the 1990s and through March 2001. WCW's wrestling programs were both witnessed by live audiences and aired on various television networks and pay-per-view cable and satellite systems. WCW's wrestling programs, both live and taped, were created by writers and producers at WCW, with the goal of entertaining wrestling fans and general audiences nationwide. The individuals responsible for writing WCW's wrestling programs were often referred to as "bookers".

4. WCW's wrestling programs included appearances by many types of live or "on-screen" talent, including wrestlers, match

referees, and other wrestling talent appearing on camera or at live (but non-televised) events. These individuals appearing in wrestling programs provided their services to WCW as independent contractors, either through formal written contracts or without written agreements.

5. Wrestlers, referees and other wrestling talent were aware of the planned outcome of each wrestling match or appearance and provided appropriate services to attempt to convincingly carry out that pre-determined outcome of the event for the audience.

6. WCW had much commercial and financial success during the mid to late 1990s. In 1999, WCW's business suffered from a sharp downturn and WCW was losing significant sums of money. Therefore, WCW began downsizing its operations by reducing the number of talent it contracted with, reducing the compensation of existing talent, and producing fewer and fewer wrestling programs. As part of the downsizing, WCW considered canceling some of its shows. In early 2000, WCW in fact terminated some of its programs, including a taped show commonly referred to as its "Saturday Night" show. Before it was canceled, the task of writing or "booking" the Saturday Night wrestling show was being performed by individuals experienced in booking wrestling

programs. At the same time, WCW also reduced the length of some of its other remaining wrestling programs.

7. Due to these business circumstances and WCW's downsizing efforts, in 1999 and over the next two years, WCW had less and less need for wrestling services, including on-screen talent, trainers, referees and writers or "bookers". Specifically, in and after 1999, there were no open opportunities available for a position solely as a booker of WCW's Saturday Night wrestling program and WCW was not actively seeking bookers solely for its Saturday Night show.

8. The downsizing efforts did not stop WCW's business downturn, and in March 2001, WCW sold certain of its assets and completely closed down its operations. After the sale of assets was completed, WCW changed its name to Universal Wrestling Corporation to close up remaining corporate operations.

9. In my capacity as Vice President of Business and Legal Affairs for WCW, I was responsible for reviewing and documenting merchandizing agreements in which WCW was a party.

10. In 1998, WCW entered into a merchandizing agreement with Toshiba in Japan to produce and distribute a music compact

disc in Japan entitled "New World Order" containing WCW entrance music. Mr. Kazuo "Sonny" Onoo was involved in this agreement. Mr. Onoo was paid all money he was due from WCW regarding this New World Order compact disc.

11. WCW also entered into a different agreement with Tommy Boy Records. Pursuant to the terms of this agreement, Tommy Boy Records developed and distributed a music CD entitled "WCW Mayhem." WCW Mayhem was a compilation of WCW music along with material created by Tommy Boy artists.

12. Kazuo "Sonny" Onoo was not a party to or involved in WCW's merchandizing agreement with Tommy Boy Records regarding the WCW Mayhem CD. Mr. Onoo did not have a financial interest in the CD's creation, marketing or sales, nor was he entitled to any profits or other compensation from the sale of this CD.

13. As a result of my position at WCW, I also have personal knowledge regarding how on-air talent was compensated by WCW and the basis of their level of compensation. Further, I have personal knowledge regarding how on-air talent was generally utilized by WCW.

14. At WCW, Wrestlers were compensated and given wrestling opportunities that were commensurate with their skill level and crowd appeal. Mr. Walker was no exception.

15. Mr. Walker wrestled in over eighty (80) matches while he was under contract with WCW. In some of these matches, he prevailed over his opponent. In other instances, the match was scripted in Mr. Walker's opponent's favor.

FURTHER AFFIANT SAYETH NAUGHT.

This 12th day of December, 2002.

DIANA MYERS

Sworn to and subscribed before me this 12th day of December, 2002.

Sandra M. Gaudet
Notary Public

My Commission Expires:
March 31, 2005

Sandra M. Gaudet
Commission # DD 002932
Expires March 31, 2005
Bonded Thru
Atlantic Bonding Co., Inc.




# EXHIBIT / ATTACHMENT

_______B_______

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICK REEVES,

Plaintiff,

v.

WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC. and TURNER, BROADCASTING SYSTEM, INC.,

Defendants.

CIVIL ACTION FILE

NO. 1:00-CV-1720-CC

**AFFIDAVIT OF PAUL ORNDORFF**

PAUL ORNDORFF, who having personally appeared before the undersigned officer duly authorized to administer oaths and having been first duly sworn according to law, deposes and states the following:

1. My name is Paul Orndorff. I am of majority age, and I give this testimony of my own free will. I have personal knowledge of and am competent to testify to the facts stated herein. The facts stated herein are true and correct.

2. I first began providing services to Universal Wrestling Corporation (f/k/a World Championship Wrestling, Inc. and hereinafter referred to as "WCW") in 1994 as a professional wrestler. After working with the organization in various capacities, I eventually became the Director of the Power Plant, WCW's training facility.

FURTHER AFFIANT SAYETH NAUGHT.

This 6TH day of January, 2003.

PAUL ORNDORFF

Sworn to and subscribed
Before me this 6TH day
of January, 2003.

Notary Public

My Commission Expires:
Notary Public, Hall County, Georgia
My Commission Expires June 29, 2003




# EXHIBIT / ATTACHMENT

C

(To be scanned in place of tab)

10/26/94

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBERT L. ROSS, JR.,

Plaintiff,

vs.

WORLD CHAMPIONSHIP WRESTLING, INC.,

Defendant.

CIVIL NO. 1:93-CV-1206-JEC

ORDER

The above entitled action is presently before the Court on the Magistrate Judge's Report and Recommendation [15] granting defendant's Motion For Summary Judgment [11] and denying as moot plaintiff's Motion to Extend Time To April 25, 1994 To Respond To Defendant's Motion For Summary Judgment [12]. Plaintiff has filed no objection(s) to the Magistrate Judge's Report and Recommendation. The Court has reviewed the record and arguments of the parties and concludes that the Magistrate Judge's Report and Recommendation should be received with approval and adopted as the opinion and order of the Court.

ACCORDINGLY, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [15] **GRANTING** defendant's Motion For Summary Judgment [11] and **DENYING AS MOOT** plaintiff's Extension Of Time [12].

SO ORDERED, this 19 day of October, 1994.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

ENTERED ON DOCKET
OCT 21 1994
U.S.D.C. CLERK
BY ____ DEPUTY CLERK

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
MAY 17 1994
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT ROSS, JR., | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:93-CV-1206-JEC |
| vs. | : | Adopted by Judge Carnes via order dated 10-19-94 |
| WORLD CHAMPIONSHIP WRESTLING, INC., | : | |
| Defendant. | : | |

ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 260-2. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of the receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no



AO 72A
(Rev. 8/82)

objections are filed, the report and recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the district court after expiration of the above time period.

IT IS SO ORDERED, this 17th day of May, 1994.

William L. Harper
WILLIAM L. HARPER
UNITED STATES MAGISTRATE JUDGE



AO 72A
(Rev. 8/82)

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
MAY 17 1994
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT ROSS, JR., | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:93-CV-1206-JEC |
| vs. | : | |
| WORLD CHAMPIONSHIP WRESTLING, INC., | : | |
| Defendant. | : | |

MAGISTRATE JUDGE'S ORDER, REPORT AND RECOMMENDATION

The above-styled employment discrimination action is presently before the undersigned Magistrate Judge for consideration of defendant's motion for summary judgment. For the reasons set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED.

Defendant filed its motion for summary judgment on March 25, 1994. (Docket No. 11). In a letter dated March 30, 1994, the Clerk of Court notified plaintiff of the filing of defendant's summary judgment motion, of his duty to respond, and of the possible consequences of a failure to respond. On April 14, 1994, plaintiff filed a motion for an extension of time within which to respond to defendant's motion, seeking an extension through and including April 25, 1994. (Docket No. 12). Without the benefit of a ruling on this motion,

plaintiff filed an untimely response to defendant's motion for summary judgment on April 26, 1994. (Docket No. 13). Defendant has subsequently filed a reply brief. (Docket No. 14).

As plaintiff's response was not filed until April 26, 1994, this response would be untimely even if the court were to grant plaintiff's motion for an extension of time. Accordingly, plaintiff's motion for an extension of time is hereby DENIED as moot.

Local Rule 220-1(b)(1) provides in relevant part that "[f]ailure to file a response [to a motion] shall indicate that there is no opposition to the motion." Accordingly, as no timely response was filed to defendant's motion for summary judgment, the undersigned Magistrate Judge deems this motion to be unopposed.

The applicability of Local Rule 220-1(b)(1) in the specific context of a motion for summary judgment was considered by the Eleventh Circuit Court of Appeals in Dunlap v. Transamerica Occidental Life Insurance, 858 F.2d 629 (11th Cir. 1988). In upholding the District Court's grant of summary judgment in favor of defendant, the court noted:



AO 72A
(Rev. 8/82)

> In Simon v. Kroger Company, 743 F.2d 1544 (11th Cir. 1984) this court upheld the entry of summary judgment under similar circumstances. The result in Simon was based upon both a finding that the summary judgment motion was well supported and a finding that a local rule in the Northern District of Georgia--which apparently was the predecessor to one of these local rules--was properly applied.
>
> Had the district court based its entry of summary judgment solely on Local Rule 220-1(b), a different question would be presented. Local Rule 220-1(b)(1) might well be inconsistent with Fed.R.Civ.P. 56 if it were construed to mean that summary judgment could be granted as a sanction for failure to respond to a motion for summary judgment. Cf. Arundar v. DeKalb Cty. School Dist., 620 F.2d 493 (5th Cir. 1980). In this case, however, Transamerica's motion was supported by evidentiary materials of record, and the district court's orders indicate that the merits of the motion were addressed.

Dunlap, 858 F.2d at 632. See also, Kinder v. Carson, 127 F.R.D. 543, 545 (S.D. Fla. 1989).

The proper approach, therefore, given the applicability of Local Rule 220-1(b)(1) to the present case is succinctly stated by the court in Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991):

In the precincts patrolled by Rule 56, the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence. This case is no exception. Given appellant's failure to contest either the government's affidavits or the Statement, the jurisprudence of both Rule 56 and Local Rule 18 demands that the movant's version of the facts be taken as true.

Of course, the district court was still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate. See Mendez v. Banco Popular, 900 F.2d 4, 7 (1st Cir. 1990); Jaroma v. Massey, 873 F.2d 17, 19-20 (1st Cir. 1989) (per curiam); see generally Amsden, 904 F.2d at 753 (court of appeals may reverse a grant of summary judgment, regardless of uncontroverted nature of facts, if "the district court erred in expounding the law").

See also, Anchorage Associates v. Virgin Islands Board of Tax Review, 922 F.2d 168 (3rd. Cir. 1990); Mendez v. Banco Popular de Puerto Rico, 900 F.2d 4, 7-8 (1st. Cir. 1990).

Additionally, the procedural deficiency of plaintiff's response likewise compels this court to accept defendant's statement of material facts not in dispute as true for purposes of ruling on the merits of defendant's motion for



AO 72A
(Rev. 8/82)

summary judgment. Local Rule 220-5(b)(2) of the Local Rules of Practice for the United States District Court for the Northern District of Georgia provides:

> The respondent to a motion for summary judgment shall attach to his response a separate and concise statement of material facts, numbered separately, to which he contends there exists a genuine issue to be tried. Response should be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in his statement shall be deemed to have been admitted. The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of F.R.Civ.P. 56(f).

Plaintiff's response to defendant's motion for summary judgment is not in compliance with Local Rule 220-5(b)(2). Accordingly, and based upon the untimely nature of this response, the undersigned Magistrate Judge adopts defendant's statement of material facts not in dispute for purposes of resolving the merits of defendant's motion for summary judgment. These facts are briefly summarized below.

Following plaintiff's honorable discharge from military service, he embarked on a career in professional wrestling.

Plaintiff adopted the ring name of "Ranger Ross," and adopted the persona of a decorated war hero.

After some time wrestling in smaller alliances and federations, plaintiff contacted David Crockett, the owner of the National Wrestling Alliance (NWA), regarding the possibility of wrestling within the NWA. At Crockett's urging, plaintiff attended a wrestling school in North Carolina operated by Nelson Royal. Based upon his observations, Royal notified Crockett that plaintiff was qualified to wrestle for the NWA.[1]

In 1988, the NWA was purchased by World Championship Wrestling, Inc. (WCW). In January 1989, plaintiff began to wrestles for WCW. Plaintiff retained the ring name of "Ranger Ross," and continued to use his assumed persona or gimmick. As was true in plaintiff's earlier professional wrestling experiences, plaintiff was required to provide his own equipment and costume at plaintiff's cost.

In this his first tour of duty with WCW, plaintiff received $1,000.00 per week plus an occasional percentage of

---

[1] Plaintiff had previously attended a wrestling school in Atlanta, Georgia, conducted by a popular former professional wrestler, Thunderbolt Paterson.



AO 72A
(Rev. 8/82)

the gate at his matches. Plaintiff wrestled approximately 15 to 20 days per month.

In May 1990, plaintiff was released due to budgetary restraints on the part of WCW. After his first WCW stint ended, plaintiff wrestled briefly in Japan. In January 1991, plaintiff was contacted by WCW President Jim Herd. After discussing the matter with Herd, plaintiff agreed to sign a form entitled "WCW Freelance Wrestler/Independent Contractor Agreement." Plaintiff read and fully understood this document before signing. This document provided that plaintiff would be engaged as an independent contractor rather than an employee, and would not enjoy any of the benefits afforded to WCW employees. Furthermore, the document provided that plaintiff, rather than WCW, would be responsible for the payment of taxes on plaintiff's income pursuant to the agreement. Plaintiff was to be paid $1,500.00 per week according to this agreement.

During the course of his relationship with WCW, plaintiff's primary contact was WCW Consultant Virgil Runnels (a/k/a Dusty Rhodes). In his position as WCW Consultant, Runnels was responsible for booking and scheduling wrestling events, for evaluating and recruiting wrestling talent, for pre-determining the final outcome of each wrestling match, and



AO 72A
(Rev. 8/82)

determining which wrestler or wrestlers to "push" into the position of heavyweight champion.

Plaintiff's performance of his work as a professional wrestler can be briefly summarized in the following manner. Plaintiff would receive a booking sheet from Runnels announcing the wrestling match's location and date approximately two weeks to 30 days in advance of the scheduled match. Plaintiff was responsible for travel to the wrestling match site, and was responsible for bearing the cost of such travel. On the date of a match, wrestlers would arrive at the venue, change into their wrestling costumes, and await further instructions. The participants were then informed which wrestler would win each match, and what the finishing move or technique for accomplishing the "victory" would be. The wrestlers were free to choreograph the remainder of the wrestling match on their own. Plaintiff and the other professional wrestlers received little if any other supervision in the performance of their duties.

During the spring and summer of 1991, professional wrestling suffered a decline in popularity. Based upon declining profits, WCW decided not to renew several wrestler's independent contractor agreements. Runnels suggested which wrestlers should be allowed to leave based primarily upon



AO 72A
(Rev. 8/82)

their popularity and drawing power. Rhodes then suggested which wrestlers to include to WCW President Herd. Rhodes specifically found that plaintiff lacked the charisma and ability to generate significant fan interest or profit for WCW. Accordingly, Runnels included plaintiff's name on the list of recommended non-renewals. Runnels suggestions were accepted by Herd, and plaintiff's contract or agreement expired in July 1991.

In all, 14 wrestlers' independent contractor agreements were not renewed during the summer of 1991. Plaintiff was the only African American included within this list. At the time of his discharge, plaintiff received compensation at a higher rate than 10 of the other wrestlers whose contracts were allowed to expire.

During the period of plaintiff's association with WCW, defendant employed approximately 334 male wrestlers. The vast majority (approximately 300) of these male wrestlers were white. Plaintiff's rate of compensation was higher than approximately 278 of these other professional wrestlers.

Plaintiff was not "pushed" into the position of heavyweight champion by Runnels and other WCW agents based upon their determination that he lacked the charisma and



AO 72A
(Rev. 8/82)

ability to generate widespread interest in his matches. It was plaintiff's deficiency in these areas which primarily separated him from three individuals who were allowed to claim the title of heavyweight champion during approximately the same time period. Of these three individuals, two (Rick Flair and Lex Lugar) were white, while the remaining individual (Ron Simmons) was black.

Runnels actually enlisted plaintiff's aid in pushing Simmons into the position of heavyweight champion. Plaintiff was portrayed as conditioning Simmons through military training thereby preparing him for an "assault" on the heavyweight championship.

After exhausting his administrative remedies, plaintiff filed his complaint in the above-styled employment discrimination action on June 1, 1993. (Docket No. 1). Plaintiff's complaint was premised solely upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Docket No. 1, ¶ 1) (See also, Plaintiff's Answer to Mandatory Interrogatories, Docket No. 2, ¶ 2, which identifies Title VII, albeit incorrectly, as 28 U.S.C. § 2000, et seq.). Within the framework of Title VII, plaintiff leveled the following charges against defendant:



AO 72A
(Rev. 8/82)

a) Created a "glass ceiling" for non-white employees and independent contractors on hiring and promotional policies to positions of World Championship Wrestler;

b) Created a practice and/or unwritten policy of putting non-white employees and independent contractors into the role of subsidiary employment or other position, and without concomitant salary, commission, bonus and title advances;

c) Promoted white employees and independent contractors on a regular basis to higher titles, salaries, commissions and bonuses over non-white employees and independent contractors of longer employment with Defendant, higher performance achievements, better personal skills and management abilities;

d) Denied non-white employees interview (and thus promotion) opportunities on a regular basis; and

e) Replaced non-white employees with equal to or less qualified whites when a white employee for the position could be located and installed.

(Docket No. 1, ¶ 6).



AO 72A
(Rev. 8/82)

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987). On summary judgment, the parties must satisfy the following burdens of proof:

> The party moving for summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio



AO 72A
(Rev. 8/82)

Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Once the moving party meets this initial burden, summary judgment is then appropriate as a matter of law against the nonmoving party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. In making a sufficient showing, the nonmoving party must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553 (quoting Fed. R. Civ. P. 56(e). In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). If, so viewed, a rational trier of fact could find a verdict for the



AO 72A
(Rev. 8/82)

> nonmoving party under the substantive evidential standard, the nonmoving party can defeat summary judgment. Id. 477 U.S. at 252, 106 S.Ct. at 2512.

Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-9 (11th Cir. 1992).

In order to fall within the statutory jurisdiction of Title VII, alleged discriminatory conduct must take place within the employer/employee relationship. Specifically, an aggrieved individual may only proceed under Title VII where that individual is an employee rather than an independent contractor. See, e.g., Wilde v. County of Kandiyohi, 15 F.3d 103, 104 (8th Cir. 1994); Cobb v. Sun Papers, Inc., 673 F.2d 337 (11th Cir. 1982), cert. denied, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982).

In order to determine whether a particular individual is an employee or an independent contractor, courts are to employ common law principles of agency. See, Cobb, 673 F.2d at 341. See also, Nationwide Mutual Insurance Co. v. Darden, 503 U.S. ____, 112 S.Ct. 1344, 117 L.Ed.2d 581, 588-90 (1992). Among the factors to be considered in making this determination are the following: the hiring party's right to control, the level of skill required, the source of equipment and tools, the location of the work, the duration of the relationship between



AO 72A
(Rev. 8/82)

the parties, the right to assign additional work, the method of payment, whether the work in question is an essential part of the hiring party's business in general, the provision of employee benefits, the tax status of the parties, and the intent of the parties. Darden, 117 L.Ed.2d at 589-90 (citing, Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). The application of these factors to the undisputed facts in the present case creates a somewhat "mixed" result. See, Cobb, supra. After carefully weighing these factors, as discussed below, however, the undersigned Magistrate Judge finds that plaintiff was an independent contractor, and that his complaints of alleged discrimination therefore fall outside of the statutory jurisdiction of Title VII.

As to the level of defendant's control over the means and manner of plaintiff's performance, the undisputed facts establish that this control was minimal. Plaintiff was allowed to create his own wrestling persona or gimmick. Furthermore, while the nature of the ending of each match was determined by defendant, plaintiff and his opponent were largely free to choreograph the bulk of the action. The balance struck between control and independence of action in this case is thus completely compatible with a finding that plaintiff was an independent contractor rather than an



AO 72A
(Rev. 8/82)

employee. See, e.g., North American Van Lines, Inc. v. NLRB, 869 F.2d 596, 599 (D.C. Cir. 1989).

As to the issue of the skill level required in plaintiff's performance of his duties, plaintiff has testified regarding the fact that he attended two separate professional wrestling schools in order to receive training. Furthermore, plaintiff admitted that an individual lacking in such training would not be qualified to perform as a professional wrestler. Furthermore, plaintiff stated that defendant required him to be evaluated at the second of these wrestling schools in order to determine whether or not he was qualified for the position. Accordingly, this factor also weighs in favor of a finding that plaintiff was an independent contractor.

Plaintiff admits that with the exception of a rope on one occasion and perhaps one pair of boots, he was solely responsible for the provision of his equipment and costumes at his own expense. Therefore, this factor weighs in favor of a finding that plaintiff was an independent contractor.

As to the location of plaintiff's work, it is undisputed that defendant informed plaintiff of the location of his various matches. As defendant controlled the location of



AO 72A
(Rev. 8/82)

plaintiff's work, this factor would tend to weigh against a finding that plaintiff was an independent contractor.

In this case, it is undisputed that plaintiff and defendant's relationship was specifically contracted for a period of six months. This specified period of time for a short duration is consistent with a finding that plaintiff was an independent contractor.

It would not appear that plaintiff had the right or ability to assign his performance to other individuals or assistants. Accordingly, this factor weighs against a finding that plaintiff was an independent contractor rather than an employee. Likewise, the fact that plaintiff was paid a salary, rather than a commission, for the vast majority of his work also tends to weigh against a finding that plaintiff was an independent contractor.

As defendant's sole business is the promotion and performance of professional wrestling matches for profit, the work performed by plaintiff and his fellow grapplers is, of course, essential to defendant's business. The undersigned notes defendant's argument, however, that professional wrestlers often move between federations and alliances and are, in one certain sense, a "fungible good." The undersigned



AO 72A
(Rev. 8/82)

finds ultimately with regard to this factor that it does not weigh heavily toward the conclusion that plaintiff was an independent contractor nor does it suggest that plaintiff was an employee.

The undisputed evidence establishes that plaintiff did not receive any fringe benefits with regard to his relationship with defendant. Furthermore, the agreement entered into between plaintiff and defendant expressly states that plaintiff is not eligible for any benefits provided to defendant's employees. Similarly, plaintiff was responsible for the payment of taxes on money received pursuant to the agreement. Accordingly, the undersigned finds that this factor weighs heavily in favor of a finding that plaintiff was in fact an independent contractor.

Finally, the undersigned considers the question of the party's intent. In the present case, the undisputed evidence inevitably points to the conclusion that both defendant and plaintiff intended to form an independent contractor relationship, and that each party considered the resulting relationship to be, in fact, an independent contractor relationship. Accordingly, the undersigned finds that this factor also weighs heavily in favor of a finding that plaintiff was an independent contractor.

As noted above, the application of this common law test to the facts in the present case generates mixed results. Without giving dispositive weight to any particular factor, the undersigned notes that generally the intent of the parties and the level of control over the performance of the individual's work are considered persuasive factors. Based upon the facts of this case, both of these factors point to a finding that plaintiff was an independent contractor. Additionally, the undersigned finds that the balancing of the remaining elements of this test also indicate that plaintiff was an independent contractor.

Accordingly, the undersigned Magistrate Judge finds that plaintiff's relationship with defendant was that of an independent contractor, and that his claims of discriminatory treatment therefore fall outside of the jurisdictional scope of Title VII. Therefore, defendant is entitled to summary judgment in its favor based solely upon this ground.

The undersigned notes, however, that alternative grounds clearly exist in support of this outcome. Specifically, the undersigned finds that plaintiff has failed to meet his burden of producing some evidence which raises a material question of fact as to discriminatory intent on the part of defendant.

The basic standards for evaluating a motion for summary judgment have been set forth above. Other standards specific to claims of discrimination under Title VII are essential to an evaluation of defendant's motion on its merits.

It should be noted that conclusory allegations based on mere subjective beliefs do not create a genuine issue of material fact. Carter v. Miami, 870 F.2d 578, 585 (11th Cir. 1989); Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983). See also, Earley v. Champion International Corp., 907 F.2d 1077, 1081 (11th Cir. 1990) (collecting cases). Specifically, in regards to plaintiff's claim under Title VII of the Civil Rights Act of 1964, it is well established that a Title VII plaintiff opposing a motion for summary judgment must present significantly probative evidence on the issue of discrimination to avoid summary judgment. Young v. General Foods Corp., 840 F.2d 825 (11th Cir. 1988), cert. denied, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); Grigsby v. Reynolds Metals Co., 821 F.2d 590 (11th Cir. 1987). Reliance solely upon speculation and unsubstantiated hearsay constitutes a failure to meet this burden. See, e.g., Palucki v. Sears, Roebuck and Co., 879 F.2d 1568 (7th Cir. 1989) ("a party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture"); Benson v. Vermont American Corp., 723 F.Supp. 1439 (M.D. Ala. 1988)



AO 72A
(Rev. 8/82)

("inadmissible evidence offered in the form of a deposition, cannot be considered by the court"), aff'd without opinion, 874 F.2d 820 (11th Cir. 1989); Williams v. Housing Authority, 709 F.Supp. 1554 (M.D. Fla. 1988) ("the court cannot base direct-evidence analysis on hearsay testimony by plaintiff"), aff'd without opinion, 872 F.2d 434 (11th Cir. 1989).

A Title VII plaintiff may demonstrate discriminatory intent through either direct or indirect evidence. Direct evidence consists of the actions or remarks of an employer reflecting a discriminatory attitude. Wall v. Trust Company of Georgia, 946 F.2d 805, 809-10 (11th Cir. 1991); Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1539 (11th Cir. 1988), modified, 848 F.2d 1522 (11th Cir. 1988). See also, Bell v. Birmingham Linen Service, 715 F.2d 1552, 1556 (11th Cir. 1983), cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). Indirect evidence may be demonstrated through the framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). For example, an individual may produce indirect evidence of a discriminatory failure to hire by establishing that he is a member of a protected group and that he "applied for an available position for which [he]



AO 72A
(Rev. 8/82)

was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Burdine, 450 U.S. at 253. This framework, however, is flexible, and can be shaped to fit employment practices other than failure to hire.

If a plaintiff presents direct evidence of discrimination, the burden of proof shifts to defendant to establish that it would have reached the identical employment decision absent unlawful considerations. See, Wall, 946 F.2d at 810 (citing, Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

Conversely, where the plaintiff has established a prima facie case of discrimination through indirect evidence a burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802. If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were merely pretexts for discrimination. Id. at 804; Wall, 946 F.2d at 809; Perryman v. Johnson Products Co., 698 F.2d 1138, 1142 (11th Cir. 1983). If the trier of fact rejects defendant's proffered reason as incredible, this rejection, coupled with the elements of

plaintiff's prima facie case, may alone support a finding of pretext. St. Mary's Honor Center v. Hicks, ____ U.S. ____, 113 S.Ct. 2742, 125 L.Ed.2d 407, 61 U.S.L.W. 4782, 4784 (1993).

The undersigned first notes that plaintiff has failed to submit any admissible evidence into the record tending to support his claim of discrimination or tending to discredit the affidavit testimony offered by defendant in support of its motion for summary judgment. Instead, plaintiff's deposition testimony is littered with admissions that he has little if any actual knowledge regarding the alleged disparities which existed between him and other supposedly similarly situated white professional wrestlers. (Deposition of Robert Lee Ross, Jr., hereinafter Ross Dep., pp. 118, 120, 124, 125-26). Plaintiff admits that no direct evidence of discrimination exists. (Ross Dep., p. 150). Additionally, the undisputed affidavit testimony offered by defendant is clearly contrary to plaintiff's vague allegations of disparate treatment. Specifically, this testimony indicates that defendant employed approximately 334 male wrestlers during the time that plaintiff wrestled with the WCW. Of this number, approximately 300 were white. Significantly, 278 individuals (the vast majority of them white) earned less compensation



AO 72A
(Rev. 8/82)

than plaintiff. (Affidavit of Eric Holman, hereinafter Holman Aff., ¶¶ 5 and 6).

As noted above, this testimony is not refuted by plaintiff. Instead, plaintiff's untimely response to defendant's motion for summary judgment is entirely devoted to the argument that plaintiff is entitled to proceed to trial on his claims pursuant to 42 U.S.C. § 1981 as well as his pendant state claims. Significantly, none of these claims were raised by plaintiff in his complaint nor referred to in his answer to mandatory interrogatories. Instead, these phantom allegations appear for the first time in plaintiff's untimely response. In sum, the only evidence arguably offered by plaintiff in contradiction to defendant's affidavit testimony are his conclusory allegations during the course of his deposition that defendant engaged in discrimination against black professional wrestlers. The record is devoid, however, of any admissible evidence tending to establish that similarly situated white wrestlers were given favorable treatment.

Assuming arguendo, however, that plaintiff had established sufficient probative evidence of discrimination to raise a material question of fact as to each element of his <u>prima facie</u> case, defendant has clearly discharged its duty to articulate a legitimate, non-discriminatory reason for its

actions. In short, the undisputed testimony establishes that Runnels and Herd jointly made the decision not to renew plaintiff's independent contractor agreement based upon his lack of wrestling skill, professional growth, popularity, and gate appeal. (Affidavit of James Herd, hereinafter Herd Aff., ¶ 6; Affidavit of Virgil Runnels, hereinafter Runnels Aff., ¶¶ 6-7).

The undersigned is aware of the recent precedent of this circuit that summary judgment is generally inappropriate in Title VII cases where a plaintiff has established sufficient evidence of each element of his prima facie case. Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). The entry of summary judgment in favor of defendant is still appropriate, however, "when evidence of discriminatory intent is totally lacking." Hairston, 9 F.3d at 921. In the present case, plaintiff has failed to present one shred of admissible evidence which would tend to establish that defendant's proffered legitimate, non-discriminatory reason was pretextual, or to otherwise establish discriminatory intent on the part of defendant. In view of this fact, defendant is entitled to summary judgment in its favor even in light of the demanding standards set forth in Hairston, supra.

Based upon the above facts, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED.

IT IS SO ORDERED, REPORTED AND RECOMMENDED, this 17th day of May, 1994.

William L. Harper

WILLIAM L. HARPER

UNITED STATES MAGISTRATE JUDGE






AO 72A
(Rev. 8/82)

ORIGINAL
CLERK'S OFFICE
U.S.D.C. Atlanta

JAN - 8 2003
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICK REEVES,

Plaintiff,

v.

WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC. and TURNER, BROADCASTING SYSTEM, INC.,

Defendants.

CIVIL ACTION FILE

NO. 1:00-CV-1720-CC

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants Universal Wrestling Corporation (f/k/a World Championship Wrestling, Inc.) ("WCW"), Turner Sports, Inc. ("TSI") and Turner Broadcasting System, Inc. ("TBS") submit this Statement of Undisputed Material facts in support of their Motion for Summary Judgment as to all claims brought by Plaintiff Rick Reeves ("Reeves").

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.

WCW created, produced, and marketed professional wrestling events during the 1990s though March 2001. (Affidavit of Diana Myers ("Myers Aff."), at ¶ 3).

2.

WCW's wrestling events were seen by live audiences and/or aired on various television networks and pay-per-view cable and satellite systems. (Myers Aff. at ¶ 3)

3.

A creative team of writers and producers at WCW created WCW's wrestling events, both live and taped, with the goal of entertaining wrestling fans and general audiences. (Myers Aff. at ¶ 3).

4.

The wrestlers and other on-screen talent who appeared in WCW's wrestling events provided their services to WCW as independent contractors, either through formal written contracts or without written agreements. (Myers Aff. at ¶ 4).

5.

Nearly all of the wrestlers who performed with WCW came to WCW from either other professional wrestling organizations, WCW's professional wrestling training program, located at its training facility known as the "Power Plant", or had otherwise established fame, notoriety or a reputation in some other sport or in the entertainment industry before coming to WCW. (Affidavit of Paul Orndorff ("Orndorff Aff"), ¶ 5).

6.

After having commercial and financial success in the mid to late 1990s, WCW's business suffered a sharp downturn in 1999. (Myers Aff. at ¶ 6).

7.

As a result, WCW restructured its business operations. (Myers Aff. at ¶ 6).

8.

Despite WCW's efforts, its business downturn continued, and in March 2001, WCW sold certain of its assets and ceased its operations. (Myers Aff. at ¶ 8).

9.

After this sale was completed, WCW changed its name to Universal Wrestling Corporation. (Myers Aff. at ¶ 8).

10.

Reeves has never performed any other services on behalf of WCW. (Deposition of Rick Reeves, ("Reeves Dep.") at 127).

11.

Reeves claims that his wrestling "career" began in 1992, after he began training with former professional wrestler Claude Patterson. (Reeves Dep. at 29).

12.

Reeves contends that in 1993, shortly after he began to "train" with Mr. Patterson, Reeves and Mr. Patterson approached Ole Anderson, who at that time worked for WCW, about Reeves becoming a wrestler for WCW. (Reeves Dep. at 30).

13.

Reeves testified that he and Mr. Patterson told Mr. Anderson that Reeves was Mr. Patterson's son to gain Mr. Anderson's interest. (Reeves Dep. at 31-32).

14.

Reeves claims that during this conversation, Mr. Anderson invited Reeves to attend some WCW wrestling program tapings. (Reeves Dep. at 32-33).

15.

According to Reeves, between 1993 and 1994, he attended several WCW television tapings. (Reeves Dep. at 33-34).

16.

Reeves testified that at these tapings, he would sit and wait for someone to ask him to wrestle. (Reeves Dep. at 35, 39).

17.

However, Reeves was never asked to wrestle or perform any services on behalf of WCW at any of the tapings that he attended. (Reeves Dep. at 34-35).

18.

Reeves testified that because he was not asked to wrestle at the tapings that he attended, he began to send video tapes of himself wrestling to WCW. (Reeves Dep. at 46).

19.

Between 1995 and 1996, Reeves claims that he sent 7 or 8 video tapes to WCW. (Reeves Dep. at 45-47).

20.

Reeves does not know to whom at WCW he sent the tapes. (Reeves Dep. at 45).

21.

Further, Reeves admits that he does not know if anyone at WCW ever received or viewed any of these tapes he sent. (Reeves Dep. at 47-48).

22.

When Reeves did not receive a response from WCW regarding the video tapes he purportedly sent to WCW, he alleges that he began calling and leaving messages with WCW employees asking to wrestle for WCW. (Reeves Dep. at 46).

23.

Reeves claims that between 1995 and 1999, he called J.J. Dillon of WCW six or seven times a month. (Reeves Dep. at 49-50).

24.

Reeves admitted that his calls were never returned and that he never even spoke to Mr. Dillon and that he does not know if Mr. Dillon even received his voice messages. (Reeves Dep. at 50-51).

25.

Mr. Dillon has never even heard of Reeves. (Deposition of James A. Morris (p/k/a J.J. Dillon), at 144).

26.

Reeves testified that, between 1995 and 1999, he also called Terry Taylor of WCW several times. (Reeves Dep. at 54).

27.

However, Reeves testified that he actually only spoke with Mr. Taylor when he saw Mr. Taylor at a bar and asked him for a job wrestling at WCW. (Reeves Dep. at 55).

28.

According to Mr. Reeves, Mr. Taylor told Reeves that he was not interested. (Reeves Dep. at 55-56).

29.

Reeves also claims that he visited WCW's training facility, the Power Plant, in a further attempt to wrestle with WCW. (Reeves Dep. at 59).

30.

Reeves allegedly asked Jody Hamilton, the individual then in charge of the Power Plant, if he could help out in some capacity. (Reeves Dep. at 59).

31.

Mr. Hamilton informed Reeves that no help was needed. (Reeves Dep. at 59).

32.

According to Reeves, Mr. Hamilton has never heard of Reeves. (Deposition of Joseph N. Hamilton, at 70).

33.

Reeves testified that he never wrestled, attended a tryout, or performed any duties on behalf of WCW at the Power Plant. (Reeves Dep. at 60).

34.

Reeves felt like he was being discriminated against as early as 1996 or 1997. (Reeves Dep. at 53).

35.

Wrestlers at WCW exercised control over the manner of their performance, were given creative freedom in performing and creating their characters, did not receive benefits, were permitted to have employment outside of WCW, and signed independent contractor agreements, often for short terms or duration. (Orndorff Aff. at ¶ 6).

This 8th day of January, 2003.

TROUTMAN SANDERS LLP

Evan H. Pontz

JOHN J. DALTON
Georgia Bar No. 203700
JAMES A. LAMBERTH
Georgia Bar No. 431851
ERIC A. RICHARDSON
Georgia Bar No. 233873
EVAN H. PONTZ
Georgia Bar No. 583577

Suite 5200, Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
(404) 885-3000

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICK REEVES,

Plaintiff,

v.

WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC. and TURNER, BROADCASTING SYSTEM, INC.,

Defendants.

CIVIL ACTION FILE

NO. 1:00-CV-1720-CC

CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of *DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT* upon the interested parties by hand delivery to:

Cary Ichter
Kelly Jean Beard
Charles Gernazian
Michelle M. Rothenberg-Williams
MEADOWS, ICHTER AND BOWERS, P.C.
Fourteen Piedmont Center, Suite 1100
3535 Piedmont Road
Atlanta, GA 30305

This 8th day of January, 2003.

EVAN H. PONTZ
Georgia Bar No. 583577

TROUTMAN SANDERS LLP
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA 30308-2216
(404) 885-3000 (voice)
(404) 885-3995 (facsimile)